UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| **LATOYLA HUFF,**  *Plaintiff,*  v.  **COMMISSIONER OF SOCIAL SECURITY,**  *Defendant.* | Civil Action No. 21-03250  OPINION |

**THIS MATTER** comes before the Court on Plaintiff Latoyla Huff's ("Plaintiff") request for review of Administrative Law Judge Richard West's (the "ALJ") decision regarding Plaintiff's application for Supplemental Security Income ("SSI") Benefits, pursuant to 42 U.S.C. §§ 1383(c)(3) and 405(g).  For the reasons set forth in this Opinion, the Commissioner of Social Security's (the "Commissioner") decision is **AFFIRMED**.

**I.   STANDARD OF REVIEW AND APPLICABLE LAW**

   **A.  Standard of Review**

   This Court has jurisdiction to review the Commissioner's decision under 42 U.S.C. § 405(g).  The Commissioner's application of legal precepts is subject to plenary review, but his factual findings must be affirmed if they are supported by substantial evidence.  Markle v. Barnhart, 324 F.3d 182, 187 (3d Cir. 2003).  Substantial evidence is "such relevant evidence as a reasonable

mind might accept as adequate." Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). Stated differently, substantial evidence consists of "more than a mere scintilla of evidence but may be less than a preponderance." McCrea v. Comm'r of Soc. Sec., 370 F.3d 357, 360 (3d Cir. 2004).

"[T]he substantial evidence standard is a deferential standard of review." Jones v. Barnhart, 364 F.3d 501, 503 (3d Cir. 2004). Accordingly, the standard places a significant limit on the district court's scope of review: it prohibits the reviewing court from "weigh[ing] the evidence or substitut[ing] its conclusions for those of the fact-finder." Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992). Therefore, even if this Court would have decided the matter differently, it is bound by the ALJ's findings of fact so long as they are supported by substantial evidence. Hagans v. Comm'r of Soc. Sec., 694 F.3d 287, 292 (3d Cir. 2012) (quoting Fargnoli v. Massanari, 247 F.3d 34, 35 (3d Cir. 2001)).

In determining whether there is substantial evidence to support the Commissioner's decision, the Court must consider: "(1) the objective medical facts; (2) the diagnoses of expert opinions of treating and examining physicians on subsidiary questions of fact; (3) subjective evidence of pain testified to by the Plaintiff and corroborated by family and neighbors; and (4) the Plaintiff's educational background, work history, and present age." Holley v. Colvin, 975 F. Supp. 2d 467, 475 (D.N.J. 2013), aff'd 590 F. Appx. 167 (3d Cir. 2014).

### B. The Five-Step Disability Test

Under the Social Security Act ("the Act"), disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 416(i)(1). To determine whether a

claimant is disabled under the Act, the Commissioner applies a five-step test. 20 C.F.R. § 416.920. First, the Commissioner must determine whether the claimant is currently engaging in "substantial gainful activity." Id. "Substantial gainful activity" is work activity involving physical or mental activities that are "usually done for pay or profit, whether or not a profit is realized." 20 C.F.R. § 416.972. If the claimant is engaged in substantial gainful activity, then he or she is not disabled, and the inquiry ends. Jones, 364 F.3d at 503. Alternatively, if the Commissioner determines that the claimant is not engaged in substantial gainful activity, then the analysis proceeds to the second step: whether the claimed impairment or combination of impairments is "severe." 20 C.F.R. § 416.905(a). The regulations provide that a severe impairment is one that "significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 416.920(c). If the claimed impairment or combination of impairments is not severe, the inquiry ends, and benefits must be denied. See id.

At the third step, the Commissioner must determine whether there is sufficient evidence to demonstrate that the claimant suffers from a cross-referenced impairment. 20 C.F.R. § 416.920(d). If so, a disability is conclusively established, and the claimant is entitled to benefits. Jones, 364 F.3d at 503. If not, the Commissioner, at step four, must decide if the claimant has the "residual functional capacity" ("RFC") to perform his past relevant work. 20 C.F.R. §416.920(e). If so, then the claim for benefits must be denied. 20 C.F.R. § 416.960(b)(3).

At the fifth step, if the claimant is unable to engage in past relevant work, the Commissioner must ask whether "work exists in significant numbers in the national economy that [the claimant] can do given [her] residual functional capacity and vocational factors." 20 C.F.R. § 416.960(c). The claimant bears the burden of establishing steps one through four. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987). The burden of proof shifts to the Commissioner at step five. Id.

## II.  BACKGROUND

### A. Procedural History

Plaintiff filed an application for Disability Insurance and SSI benefits on May 19, 2015, alleging disability as of October 3, 2014. Administrative Transcript, ("Tr.") 160-172. Her claims were initially denied on February 15, 2016, and upon reconsideration on October 23, 2017. Tr. 87-92, 97-102.

On February 17, 2016, Plaintiff requested than an Administrative Law Judge ("ALJ") review her claims. Tr. 103, 104. Plaintiff thereafter appeared at a hearing before ALJ Dennis O'Leary on October 23, 2017, in Newark, NJ. Tr. 23-50. Plaintiff was represented by counsel at the hearing, and a vocational expert ("VE") testified. Id. On October 30, 2017, the ALJ issued his decision, concluding that Plaintiff was not disabled within the meaning of the Act. Tr. 10-18.

Plaintiff requested Appeals Council review and the Appeals Council affirmed Judge O'Leary's decision on June 8, 2018. Tr. 338. On January 29, 2020, this Court remanded the case for a further assessment of Plaintiff's obesity, and ability to perform sedentary work. Tr. 344-383. Due to the retirement of Judge O'Leary, the hearing was held before ALJ Richard West on October 21, 2020. Tr. 311-331. On November 2, 2020, the ALJ issued his decision, finding that Plaintiff is not disabled due to the number of existing jobs that she is able to perform given her RFC. Tr. 295-306. This Action followed. Plaintiff filed her complaint February 23, 2021. ECF No. 1.

Plaintiff now argues that the ALJ (1) failed to meaningfully consider her obesity under this court's request, and (2) issued an RFC without a sufficient explanation by utilizing the framework of the vocational rules instead of ordering VE testimony. Pl. Br. 10, 31.

Regarding Plaintiff's first argument, Defendant argues that substantial evidence supported the ALJ's evaluation of Plaintiff's obesity, and that the ALJ explicitly considered this evidence

4

throughout his decision. Def. Br. 13. Regarding Plaintiff's second argument, Defendant contends that no medical provider indicated that Plaintiff had any non-exertional limitations due to her obesity, and that the ALJ properly relied upon the Medical-Vocational Guidelines as a framework to determine that there are a significant number of sedentary, unskilled jobs in the national economy that Plaintiff can perform. Def. Br. 25. Defendant further contends that even if the ALJ erred by not ordering VE testimony, this error is harmless, as the previous ALJ elicited and relied on VE testimony, and Plaintiff has failed to show how this omission of testimony would change the outcome of the ALJ's decision. Def. Br. 28, 29.

### B. General Background

Plaintiff was born in 1974 and applied for SSI disability benefits in 2015 when she was 41 years old. Tr. 160. Plaintiff received an Associate's degree in childhood development after completing high school. Tr. 188. Plaintiff worked as a teacher at a childcare center from 1997 until 2012 when she was laid off due to low enrollment. Tr. 28, 187, 208. Plaintiff alleges disability due to several physical impairments, including osteoarthritis, migraines, hypertension, diabetes mellitus, obesity, and intermittent high frequency tremors. Tr. 29.

Dr. Anu Chaudhry treated Plaintiff from July 2014 to April 2015. Tr. 263-270. Plaintiff was examined and treated for ongoing migraines. Id. MRI images of Plaintiff's right knee also showed intact menisci without surface extension tearing, intact ligaments and tendons, and mild lateral tracking of the patella. Tr. 269, 270. Plaintiff completed an RFC Questionnaire with Dr. Chaudhry on July 27, 2017. Exhibit 5F, Tr. 290. In his report, Dr. Chaudhry found that Plaintiff can sit up to one hour per day, never stand or walk, occasionally lift up to 10 pounds, and would be absent for more than four days per month due to her impairments. Id.

In a Function Report dated June 2015, Plaintiff reported that she lives in an apartment with her family, routinely takes medications, watches television, and does household chores, including cleaning bathrooms, vacuuming, mopping, and taking the garbage out every day. Tr. 204. Plaintiff does not have a driver's license, but shops online, reads, plays computer games, and goes outside. Tr. 205. Plaintiff regularly attends church, shops in stores, goes to doctor's appointments, and visits her nieces twice a week. Tr. 303.

Plaintiff's sister, Latasha Huff, completed a third-party Function Report in June 2015 in which she reported Plaintiff could ride in a car, shop (in stores and online), handle her financial affairs, watch television, use the computer, and read. Tr. 198.

Consultative internist Dr. Rambhai Patel also treated Plaintiff on September 22, 2015. Exhibit 3F, Tr. 271, 272. Dr. Patel's examination found that Plaintiff had no abnormalities in her gait, no vascular or neurological involvement from diabetes mellitus, was able to perform fine and gross movements with both hands, has normal grip, a normal chest, and can walk without any assistive devices and without any sensory or motor deficits. Exhibit 3F at 2, Tr. 272.

Dr. Gary Miller conducted a neurological evaluation for Plaintiff on February 28, 2020. Exhibit 7F, Tr. 542-589. Despite Plaintiff's complaints of daily low-grade headaches (with worse headaches occurring three or four times a week), and tremors in her right leg multiple times a day, Dr. Miller physical examination resulted in entirely normal results, including those of her neurological examinations. Id.

**C. ALJ Decision**

The ALJ determined that Plaintiff was not disabled under the five-step framework. At step one, the ALJ concluded that the claimant has not engaged in substantial gainful activity since October 3, 2014 (the alleged onset date). Tr. 298. At step two, the ALJ concluded that the

claimant's osteoarthritis, migraines, hypertension, diabetes mellitus and obesity qualified as severe impairments.  Id.  However, the ALJ found that the claimant's intermittent high frequency tremors were not severe because there were no signs of Parkinsonism on examination of claimant and the medical record lacked any indication of complications or ongoing limiting physical symptoms related to these conditions.  Id. At step three, the ALJ found that the claimant did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.  Id.

Before moving on to step four, the ALJ found the Plaintiff's residual functional capacity to be as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20CFR404.1567(a) and 416.967(a) except she must avoid dangerous machinery and unprotected heights; and she can understand, remember and carry out simple instructions.

Tr. 300.  In reaching this RFC determination, the ALJ considered claimant's "severe" impairments involving osteoarthritis, hypertension, and diabetes mellitus, and accommodated these impairments by limiting the claimant to sedentary work.  Id.  Furthermore, the ALJ accounted for the claimant's migraine headaches and hypertension by, "limiting the claimant to never being exposed to unprotected heights or hazardous machinery, as well as limited work involving no more than understanding, remembering, and carrying out simple instructions."  Id.

The ALJ used a two-step process in considering the claimant's symptoms. First, the ALJ determined that the claimant has an underlying medically determinable physical or mental impairment.  Tr. 300. The claimant did not satisfy the second step in which the ALJ evaluates the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's work-related activities.  Id.  Although the ALJ found that the claimant's medically determinable impairments could reasonably be expected to cause the alleged

7

symptoms, the claimant's statements regarding the intensity, persistence, and limiting effects of her symptoms were not consistent with the medical evidence provided. Id. In reaching this conclusion, the ALJ compared the claimant's statements to the medical records in Exhibits 6F and 7F, in which claimant continued to report that her headaches were improving and occurring less frequently with adjustments to her medication regimen, as well as the physical examinations provided in these Exhibits which consistently produced normal results. Tr. 301, 302.

The ALJ also conducted an in-depth analysis of the claimant's obesity, ultimately finding that claimant could perform the demands of sedentary work with environmental limitations due to her impairments, including her obesity. Tr. 299. The ALJ began his analysis by stating that he has considered the claimant's obesity individually and in combination with her other impairments at step three, in connection with the Order of Remand by this court. Id. The ALJ then explained how he took the potential impact of this obesity in causing or contributing to co-existing impairments into consideration. Id. The ALJ provided examples of how obesity can affect other disabilities, and why obesity must be viewed subjectively in conjunction with these other disabilities:

> "For example, obesity may affect the cardiovascular and respiratory systems, making it harder for the chest and lungs to expand and imposing a greater burden upon the heart. Someone with obesity and arthritis affecting a weight-bearing joint may have more pain and limitation than might be expected from arthritis alone. In addition, obesity may limit an individual's ability to sustain activity on a regular and continuing basis during an eight-hour day, five-day week or equivalent schedule. These considerations have been taken into account in reaching the conclusions herein at the 2nd through 5th steps of the sequential disability evaluation process, even though no treating or examining medical source has specifically attributed additional or cumulative limitations to the claimant's obesity."

Id. The ALJ concluded by stating that although Plaintiff's obesity combined with her other disabilities would not allow her to perform exertional demands like heavy, medium, or even light levels of lifting, the effects of the conjunction of Plaintiff's disabilities would not bar her from performing sedentary work as detailed in the RFC decision. Tr. 299-300.

8

At step four, the ALJ found that Plaintiff was unable to perform relevant past work. Tr. 305. However, because the Plaintiff is defined as a younger individual, and has at least a high school education, the ALJ found that there are jobs that exist in significant numbers in the national economy that the claimant can perform at step five. Id.

At step five, the ALJ determined that Plaintiff can make a successful adjustment to other work by using the Medical-Vocational Guidelines, in accordance with 20 CFR Part 404, Subpart P, Appendix 2. Tr. 305. The ALJ found that Plaintiff has the residual functional capacity to perform the full range of sedentary work provided, in consideration of her age, education, and work experience, and that Plaintiff's non-exertional limitations have little or no effect on the occupational base of unskilled sedentary work. Id. The ALJ accordingly classified Plaintiff as "not disabled" under the framework of SSR 96-9p. Id.

### III. ANALYSIS

#### A. THE ALJ ADEQUATELY CONSIDERED PLAINTIFF'S OBESITY IN EVERY STEP OF THE SEQUENTIAL EVALUATION

Plaintiff first argues that the ALJ failed to meaningfully consider Plaintiff's obesity at each step of the sequential evaluation following the Step 2 finding that it constitutes a severe impairment. Pl. Br. 10.[1] This Court disagrees.

An ALJ must meaningfully consider the effect of a claimant's obesity, individually and in combination with her impairments at step three and at every subsequent step. Diaz v. Comm'r of Soc. Sec., 577 F.3d 500, 504 (3d Cir. 2009). Plaintiff relies heavily on Diaz despite notable differences in the case at hand. Id. The court in Diaz overturned the ALJ's decision for failure to acknowledge or discuss the plaintiff's obesity, in conjunction with other impairments, in any

---

[1] Plaintiff also alleges that the ALJ did not adhere to this Court's Remand Order, requiring further consideration of Plaintiff's obesity. Pl.'s Br. 28, 29. The Court will not separately address this argument.

manner, stating: "[w]ere there any discussion of the combined effect of [the plaintiff's] impairments, we might agree with the District Court. However, absent analysis of the cumulative impact of Diaz's obesity and other impairments on her functional capabilities, we are at a loss in our reviewing function". Id at 504. Plaintiff also attempts to compare the case at hand to both Alicea v. Comm'r of Soc. Sec., and Padilla v. Astrue, but these cases involve an ALJ that did not consider the plaintiff's obesity at all. No. 13-cv-7302, 2014 WL 6978457 (D. N.J. Dec. 8, 2014); No. 10-cv-4968, 2011 WL6303248 (D.N.J. Dec. 15, 2011). Here, the ALJ meaningfully considered and discussed Plaintiff's obesity at step 3 and subsequent steps and reemphasized these considerations throughout his analysis.

The ALJ not only referenced Plaintiff's obesity throughout his analysis, but repeatedly explained how Plaintiff's obesity related to his conclusions. The ALJ acknowledged that the Court is in no position to make assumptions about the severity or functional effects of obesity combined with other impairments, and "must evaluate each case based on the information in the case record." Tr. 299. In doing so, the ALJ gave Plaintiff the benefit of the doubt by discounting any medical records reflecting that Plaintiff could perform light work, because these opinions did not consider Plaintiff's obesity combined with her other impairments that impose greater limitations on her RFC. Tr. 303. The ALJ then discussed the medical records from Dr. Patel, which found Plaintiff to be obese, but failed to find any abnormalities in Plaintiff's gait or motor functions. Id. The ALJ continued to review the remaining relevant medical evidence, including treatment records from Dr. Mu Chaudry, and treatment notes from Dr. Miller's neurological evaluation, conducted on February 28, 2020. Tr. 302. The ALJ found that Plaintiff's complaints of pain in her right knee and headaches were contrary to evidence in light of these records. Id. The ALJ further explained that treating physician Dr. Chaudry's reports received less weight than Dr. Patel's report, as Dr.

10

Chaudry's findings were contradictory to the supporting treatment records. Tr. 304. Dr. Chaudry opined that Plaintiff, "[was] able to sit up one hour per day, never stand or walk, occasionally lift and carry up to 10 pounds, and would be absent more than four days per month due to her impairments," yet these conclusions were contrary to not only Dr. Patel's findings, but to Plaintiff's own reported daily activities. Tr. 304.

In sum, Plaintiff claims that the ALJ did not properly analyze her obesity and its effect on her alleged disability. However, not only does the ALJ give ample consideration to Plaintiff's obesity from steps two to five, but he consistently concludes that the medical evidence is entirely contrary to what Plaintiff alleged.

### B. The ALJ Properly Relied on the Medical-Vocational Guidelines to Determine Plaintiff's RFC, and Was Not Required to Order Testimony from a Vocational Expert.

Plaintiff contends that the ALJ improperly relied on the medical-vocational guidelines to determine that a significant number of jobs exist in the national economy that plaintiff can perform. Pl. Br. 30, 31. More specifically, Plaintiff argues that the ALJ erred by not ordering VE testimony. Id. For the reasons below, the Court disagrees.

The standard for when an ALJ is required to consider testimony from a vocational expert is well established. An ALJ is "not required to consult a vocational expert or other vocational resource in all instances in which [they] decide whether an individual who has a non-exertional limitation(s) is or is not disabled." AR 01-1(3), 2001 WL 65745 (S.S.A.). Specifically, "where a person comes very close to meeting the criteria of a grid rule directing a finding of not disabled because it is clear that the additional non-exertional limitation(s) has very little effect on the exertional occupational base, [an ALJ] may rely on the framework of the grid rules to support a

finding that the person is not disabled without consulting a vocational expert or other vocational resource." Id. at 3.

Plaintiff alleges that her migraine headaches, fatigue, hypertension, and diabetes qualify as non-exertional impairments that require the ALJ to use VE testimony. Pl. Br. 34. However, the ALJ explicitly stated that these non-exertional impairments were considered in his RFC analysis, and were not significant enough to require further VE testimony:

> Claimant's testimony and additional Exhibits were considered, but the evidence as a whole remains supportive of the above residual functional capacity for the reasons set forth in the November 3, 2017 ALJ Decision. . . The undersigned noted that the above residual functional capacity takes into account the additional 'severe' impairments involving osteoarthritis, hypertension and diabetes mellitus. The undersigned has also accommodated for the osteoarthritis and obesity by limiting the claimant to sedentary work. The undersigned has accounted for the migraine headaches and hypertension by limiting the claimant to never being exposed to unprotected heights or hazardous machinery. The undersigned has also accounted for the headaches by limiting claimant to work involving no more than understanding, remembering and carrying out simple instructions.

Tr. 300. The ALJ also explained that "the only new evidence submitted since earlier periods of adjudication at Exhibit 6F [failed] to confirm that the claimant had experienced any deterioration in her condition and they do not support her allegations of alleged disability." Tr. 304. Since there was no medical evidence introduced that changed the outcome of the RFC determination, the ALJ was not obligated to order more VE testimony.[2]

The ALJ's opinion sufficiently considered Plaintiff's non-exertional impairments in his RFC analysis and determined that a significant number of jobs exist in the national economy that

---

[2] The ALJ also benefitted from prior VE testimony, which ALJ O'Leary relied on to find that a significant number of jobs existed in the national economy for an individual with Plaintiff's RFC and vocational characteristics. Def. Br. 28. Because ALJ West reached an identical RFC conclusion to that of ALJ O'Leary, Plaintiff has failed to show how new VE testimony would change the outcome of the ALJ's decision. See Holloman v. Comm'r Soc. Sec., 639 F. App'x 810, 814 (3d Cir. 2016) (Finding harmless error where the appellant failed to "explain [ ] ... how the ... error to which he points could have made any difference.")

plaintiff can perform. Tr. 305. As such, the ALJ was not required to order testimony from a vocational expert. The Court is therefore satisfied that the ALJ did not err in relying solely on the Medical Vocational Guidelines.

### III. CONCLUSION

For the foregoing reasons, the determination of the Commissioner is **AFFIRMED.**

Date: April 26th, 2023                   **/s/ Madeline Cox Arleo**
                                         **Hon. Madeline Cox Arleo**
                                         **UNITED STATES DISTRICT JUDGE**